UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

SERGIO MARTINEZ-GONZALEZ,

Defendant.

No. 4:19-cr-06026-SMJ

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

On October 3, 2019, the Court heard oral argument on Defendant's Motion to Dismiss Indictment, ECF No. 36. At the conclusion of the hearing, the Court ruled orally, granting the motion and dismissing the indictment. This order memorializes and supplements the Court's oral ruling.

**BACKGROUND**

Defendant Ricardo Santos-Ramirez[1] is an alleged citizen of Guatemala charged with illegally reentering the United States after previously being removed, in violation of 8 U.S.C. § 1326. ECF No. 1. He challenges the validity of the underlying order of removal, entered in May 2007. ECF No. 36.

---

[1] Defendant is charged as Sergio Martinez-Gonzalez but attests his real name is Ricardo Santos-Ramirez. ECF No. 36 at 1.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 1

When Defendant was encountered by immigration officials at that time, he was served with a document titled "Notice to Appear" (NTA) alleging that he was a Guatemalan citizen in the United States without legal authorization, ECF No. 36-1. The NTA ordered Defendant to appear for a hearing at a location "to be determined," on "a date to be set at a time to be set." *Id.* The NTA indicates that it was served on Defendant personally and that Defendant "was provided oral notice in the Spanish language of the time and place of his [] hearing and of the consequences of failure to appear." *Id.* at 2.

Defendant requested prompt resolution of the removal proceedings, and less than two weeks later was served with a document titled "Notice of Hearing" (NOH), ECF No. 36-2. The NOH informed Defendant that the removal hearing would take place the same day and provided the address where it would occur. *Id.* At the hearing, an order of removal was entered, and Defendant was subsequently removed. ECF No. 36-3. In April 2019, Defendant was encountered in the Benton County jail and charged with illegally reentering the United States. ECF No. 1.

**LEGAL STANDARD**

A defendant charged with illegal reentry may collaterally attack the predicate order of removal. 8 U.S.C. § 1326(d). A defendant making such a challenge must generally prove three things: (1) that he exhausted available administrative remedies, (2) that the proceedings "improperly deprived [him] of the opportunity for judicial

review," and (3) that the removal order was "fundamentally unfair." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (quoting 8 U.S.C. § 1326(d)). Fundamental unfairness means the removal proceedings violated the alien's due process rights, and that those violations resulted in prejudice. *Id*. at 1202.

A defendant may also argue that the immigration court which entered the removal order lacked jurisdiction to do so. If a defendant is successful, the order of removal is void and cannot serve as the basis for a violation of § 1326, and in that case, a defendant need not establish the elements of § 1326(d). *See Wilson v. Carr*, 41 F.2d 704, 706 (9th Cir. 1930) ("If [an] order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it."); *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 884 (9th Cir. 2003) ("Unlike a claimed due process violation, a component of which is to show prejudice, . . . the BIA's lack of authority to enter Noriega–Lopez's removal order renders that component of his proceedings 'in essence, a legal nullity.'" (citations omitted)); *United States v. Muniz-Sanchez*, 388 F. Supp. 3d 1284, 1288 (E.D. Wash. 2019) ("Accordingly, the Court disregards the removal order that was issued ultra vires, and need not analyze whether Defendant may collaterally attack the underlying removal order under 8 U.S.C. § 1326(d).").

## DISCUSSION

Defendant argues that because the putative NTA with which he was served failed to provide the address of the immigration court where it would be filed, jurisdiction never vested in the immigration court, and the removal order is therefore void. The Government contends that omission of the address did not make the NTA deficient, and even if it did, the immigration court nevertheless had jurisdiction over Defendant's removal proceeding. For the reasons that follow, the Government's arguments are unavailing.

### A.  Deficient NTA

Because Defendant's argument revolves around the regulatory scheme governing removal proceedings, the Court begins there. Removal hearings are civil proceedings that take place before immigration courts, creatures both of statute and regulation. *See* 8 U.S.C. § 1229a(a)(1); 8 C.F.R. § 1003.09, .10. Congress delegated to these administrative tribunals exclusive jurisdiction over proceedings to determine the "inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1), (3). Pursuant to this delegation, the Attorney General promulgated regulations appointing immigration judges and defining the scope of their authority. *See* 8 C.F.R. § 1003.10(b) ("[I]mmigration judges shall exercise the powers and duties delegated to them by the [Immigration and Nationality] Act and by the Attorney General through regulation. In deciding the individual cases before them . . . immigration

judges . . . may take any action consistent with their authorities under the Act and regulations."). The issue in this case is an immigration judge's authority to preside over a particular alien's removal proceeding—in other words, the immigration judge's jurisdiction.

The applicable regulations provide that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a). The term "charging document" is defined to include, as relevant here, an NTA. *Id.* at § 1003.13. The regulations also dictate what an NTA must or should include. First, they provide that an NTA *should* include "the time, place and date of the initial removal hearing, *where practicable*." *Id.* at § 1003.18(b) (emphasis added); *see also Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019). The Court labels this the "place-of-hearing" regulation. Second, the regulations dictate that an NTA *must* include, among other things, "[t]he address of the Immigration Court where" it will be filed. 8 C.F.R. § 1003.15(b)(6). This latter provision, which the Court labels the "place-of-filing" regulation, contains no qualification as to the practicability of including the required information.

It is undisputed that the NTA served on Defendant did not include the address of the immigration court where it would be filed—indeed, the NTA contained no address of any kind. *See* ECF No. 36-1 at 1–2. The question, therefore, is whether

this omission rendered the NTA deficient such that it was incapable of vesting jurisdiction in the immigration court.

The Government contends that the regulations do not require—at least as a prerequisite to the immigration court's jurisdiction—that the NTA include place-of-filing information. *See* ECF No. 37 at 16–17. As an initial matter, the Government errs by conflating the place-of-*filing* regulation at issue here with the place-of-*hearing* regulation at issue in *Karingithi*. *See* 913 F.3d at 1158. Focusing on the regulatory language "where practicable," the Ninth Circuit in that case held that an NTA which failed to include place-of-hearing information was nonetheless sufficient to confer jurisdiction on the immigration court. *Id.* Because *Karingithi* involved an entirely different regulatory requirement than the one at issue here, its holding does not resolve the issue before the Court. Nor is *Karingithi*'s reasoning apt for the Government's purposes. The focus of the Ninth Circuit's analysis was the qualifying language "where practicable," *Id.* at 1160, which is obviously inconsistent with an absolute requirement. The place-of-*filing* regulation, by contrast, contains no comparable qualification.[2] Because the provision's drafters are presumed to have regulated with precision, the Court will not infer such a proviso. *See Williams v. Taylor*, 529 U.S. 362, 404 (2000). The most straightforward reading

---

[2] For the same reason, the deficiency in the putative NTA could not be remedied by the later NOH, even if that document contained place-of-filing information for the earlier NTA, which it did not. *See Karingithi*. 913 F.3d at 1160; ECF No. 36-2.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 6

of the regulatory text is that an essential element of an NTA is the address where it will be filed.

In this respect, the reasoning of *Pereira v. Sessions*, 138 S. Ct. 2105 (2018) is persuasive—though not the holding, which *Karingithi* makes clear is inapplicable to the jurisdictional question before the Court. 913 F.3d at 1161. There, the Supreme Court considered whether a putative "notice to appear," a document defined by statute, which omitted certain required information was capable of triggering a statutory provision not relevant here. 138 S. Ct. at 2113–14. The Supreme Court held that it was not, observing that the statute employed "quintessential definitional language," and holding that a putative notice which failed to include statutorily required information "unquestionably would deprive [it] of its essential character." *Id.* at 2116–17 (internal quotations omitted). The Supreme Court noted that "[t]he statutory text alone is enough to resolve this case," *Id.* at 2114, and so it is here with the regulatory text. In sum, the Court concludes that a putative notice which fails to include the address of the immigration court where it will be filed is deficient. 8 C.F.R. § 1003.15(b)(6).

**B.     Effect of Deficiency**

Having concluded that the putative NTA served on Defendant was deficient, the Court must decide what effect the deficiency had on the immigration court's jurisdiction. The answer is simple: if no valid NTA was filed with the immigration

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 7

court, that tribunal lacked jurisdiction to adjudicate the merits of Defendant's removability, and the order of removal it entered is void.

The Government resists this straightforward reading of the regulations by arguing that they are merely "claims processing rules," the violation of which does not trigger the "drastic consequences" of subject matter jurisdiction. ECF No. 37 at 13. This argument is foreclosed by the holding of *Karingithi* that "the regulations [] clearly enumerate requirements for the contents of a notice to appear for jurisdictional purposes." 913 F.3d at 1160 ("The regulatory definition . . . governs the Immigration Court's jurisdiction.").

More importantly, the Government's position is incompatible with the plain text of the regulations. The Supreme Court has made clear that courts should only attach the significance of subject-matter jurisdiction when "the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006). The regulation at issue here, which the Attorney General chose to title "*Jurisdiction* and commencement of proceedings," states that "[*j*]*urisdiction vests*, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a) (emphasis added). The Court therefore has no difficulty finding that the Attorney General intended to attach jurisdictional significance to the regulations.

The Government next argues that even if that was the Attorney General's intention, he had no authority to define the subject matter jurisdiction of the immigration courts. As a proposition of law, this is no doubt correct. *See City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 297 (2013). But the issue here is not whether the immigration court acted outside the scope of the authority Congress delegated to it. The issue is whether the immigration court had the authority to preside over Defendant's removal proceeding. More simply, the issue is not *an* immigration judge's authority to preside over *a* removal proceeding, but rather *this* immigration judge's authority to preside over *this* removal proceeding. Congress delegated the authority to prescribe the conditions which must be satisfied for that authority to vest, and the Attorney General made filing of a valid NTA one of those conditions. 8 C.F.R. § 1003.14(a); *see also Karingithi*, 913 F.3d at 1160 ("The regulatory definition . . . governs the Immigration Court's jurisdiction."). Because the Court finds that one of these conditions was not satisfied, it concludes that the immigration court lacked jurisdiction over Defendant's removal proceedings. The order of removal is therefore void.

**C.    § 1326(d) Elements**

Because Defendant has established that the underlying order of removal is void for lack of jurisdiction, he need not establish the elements of 8 U.S.C. § 1326(d). *See Wilson*, 41 F.2d at 706; *see also Muniz-Sanchez*, 388 F. Supp. 3d at 1288.

## CONCLUSION

Because it is beyond dispute that the putative NTA served on Defendant failed to include the address of the immigration court where it would be filed, as required by the applicable regulations, that notice was insufficient to vest jurisdiction in the immigration court which entered the order of removal underlying this prosecution. Because the Government cannot establish an essential element of the offense charged, the indictment must be dismissed.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Dismiss Indictment, **ECF No. 36**, is **GRANTED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel, the U.S. Probation Office, and the U.S. Marshals Service.

**DATED** this 17th day of October 2019.

_____
SALVADOR MENDOZA, JR.
United States District Judge